PLYMOUTH AND SANDWICH STREET RAILWAY COMPANY *vs.* INHABITANTS OF PLYMOUTH & others.

Suffolk. December 2, 3, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, & PIERCE, JJ.

*Municipal Corporations. Mandamus.*

A vote passed by a town, under authority given by a statute, that "the selectmen . . . be and are hereby authorized in the name and on behalf of the town to subscribe for or purchase five hundred (500) shares of the capital stock of [a certain street railway corporation] at a price not exceeding the par value thereof," and that "such subscription or purchase shall not be made by the selectmen until they are satisfied that the balance of the amount necessary for the construction and equipment of said road is fully provided for," is not of the class of votes giving authority to do an act which are to be construed as directing that the act shall be done, and where the selectmen of the town, acting under this vote in good faith, after consideration of the situation, were not satisfied that the railway corporation had fully provided for the "balance of the amount necessary" within the terms of the vote, and refused to make the subscription when requested to do so by the railway corporation, the railway corporation cannot maintain a petition for a writ of mandamus to compel the town to make the subscription.

PETITION, filed on October 10, 1917, by the Plymouth and Sandwich Street Railway Company for a writ of mandamus addressed to the town of Plymouth and its selectmen commanding them to subscribe for or purchase five hundred shares of the capital stock of the petitioner under the authority given by St. 1911, c. 95, in accordance with a vote of that town, which is quoted in the opinion.

The case was heard by *De Courcy*, J. Upon the facts which are stated in the opinion he made the following finding: "I find that

the selectmen, in good faith and after consideration of the situation, are not satisfied that the road has provided the 'balance of the amount necessary' within the terms of the vote. Until they are so satisfied, the subscription for the stock is discretionary with them. The court cannot control the exercise of that discretion, at least so long as the selectmen act in good faith. For this reason the petition must be dismissed, and it is so ordered."

At the request of the petitioner the single justice reported the case for determination by the full court.

*J. P. Fagan,* (*J. E. Cotter* with him,) for the petitioner.

*H. W. Brown,* for the respondents.

LORING, J. On March 2, 1911, the town of Plymouth was authorized (among other things) to subscribe for shares in the capital stock of the petitioner on a condition which was duly fulfilled later on. St. 1911, c. 95. On the twenty-fifth day of the same month the town voted "that the selectmen for the time being be and are hereby authorized in the name and on behalf of the town to subscribe for or purchase five hundred (500) shares of the capital stock of the Plymouth & Sandwich Street Railway Company at a price not exceeding the par value thereof. Such subscription or purchase shall not be made by the selectmen until they are satisfied that the balance of the amount necessary for the construction and equipment of said road is fully provided for." Later on (apparently on February 28, 1917) the railway company "made demand on the selectmen for the purchase of five hundred shares of its capital stock. On the refusal of the selectmen, this petition for mandamus was brought."

On January 1, 1917, the cost of the construction and equipment of the road amounted to $387,000 (in round figures) "with some thousands of dollars yet to be expended for necessary construction." $152,000 of the $387,000 had been provided for by the issue of capital stock; $217,000 by borrowing money on notes payable in one year after the money was borrowed (some of these notes were overdue) and for the balance of $18,000 the company had run in debt. It is not clear on the report whether "some thousands of dollars yet to be expended for necessary construction" covers the cost of completing the road to Sandwich or whether the cost of completing the road to Sandwich is in addition to the "some thousands of dollars yet to be expended

for necessary construction." The road had been constructed to a point three quarters of a mile short of the boundary line between Bourne and Sandwich and the cost of completing it to the boundary line was estimated to be about $2,500. The village of Sandwich lies one mile and a half farther on and the cost of completing the road to the village would have required an estimated expenditure of $21,000 to $25,000.

By the true construction of the vote of the town the selectmen were given permission to subscribe to five hundred shares in the capital stock of the railway company. There are instances in which votes giving authority to do an act are to be construed to be votes directing that act to be done. This is not one of those cases. Beyond this the authority or permission to subscribe was made conditional on the selectmen being "satisfied that the balance of the amount necessary for the construction and equipment of said road" has been "fully provided for;" that is to say on the selectmen being satisfied that the amount necessary for the construction and equipment of the road in addition to the $50,000 which would come to the petitioner from the subscription of the town (if the selectmen subscribed for shares of stock under the vote of the town) had been "fully provided for." The single justice found that the "selectmen, in good faith and after consideration of the situation, are not satisfied that the road has provided the 'balance of the amount necessary' within the terms of the vote." This finding is decisive of this case.

From the terms of the report it would seem that the correctness of the finding made by the single justice is not now before us. But an extended argument on that point has been made. If the correctness of the finding made by the single justice is before us we are of opinion that it was correct. Indeed it is hard for us to see how any other conclusion could have been reached either by the selectmen or by the single justice. In saying this we have not overlooked the fact that the petitioner had no mortgage debt, that "it planned to refund the construction notes by an issue of stock or other form of permanent security when the road had been completed and was in a position so to do. And the bankers for the petitioner agreed with the petitioner to effect a renewal of such of said notes as were not exchanged at maturity for preferred stock." And that at the meeting held on February 28, 1917,

"between representatives of the petitioner and the selectmen, said representatives offered to accept the bonds of the town issued under the votes passed at the meeting of March 25, 1911, or to find purchasers for the same."

It is not necessary to consider the further objections urged against granting to it the relief sought by the petitioner through this petition.

*Petition dismissed.*